**NIXON PEABODY LLP**
Craig R. Tractenberg [CT-6759]
Madison Avenue
New York, New York 10022
Telephone:  (212) 940-3722
Facsimile:  (866) 852-2714
*Attorneys for Defendant Kahala Holdings LLC.*
*Kahala Franchising LLC, Kahala Restaurants LLC,*
*Kahala Franchise Corp. Kahala Restaurant Holdings, LLC*
*and Kahala Brands Ltd.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ANAYELI GUZMAN and HECTOR REYES, *individually and on behalf of others similarly situated,* | Index No.  15-cv-09625 (LGS) |
| Plaintiffs, | **ANSWER TO SECOND AMENDED COMPLAINT BY KAHALA FRANCHISING LLC, KAHALA HOLDINGS LLC., KAHALA RESTAURANT HOLDINGS LLC,  KAHALA FRANCHISE CORP., KAHALA RESTAURANTS LLC and KAHALA BRANDS LTD.** |
| -against- | |
| KAHALA HOLDINGS LLC, KAHALA RESTAURANTS LLC, KAHALA FRANCHISING LLC, KAHALA RESTAURANT HOLDINGS LLC, KAHALA FRANCHISE CORP., KAHALA BRANDS LTD., NEW AGE FOOD CONCEPTS, INC. (d/b/a RANCH ONE), VINOD KUMAR CHAND, and SAMY EL FOULY (aka MOHAMED E. HUSSEIN and MOHAMED SAMY HUSSEIN), | COLLECTIVE ACTION UNDER 29 U.S.C. § 216(b) |
| Defendants. | ECF Case |

Defendants Kahala Holdings LLC, Kahala Franchising LLC, Kahala Restaurant Holdings LLC, Kahala Restaurants LLC, Kahala Franchise Corp and Kahala Brands Ltd. (collectively, "Kahala") answer as follows:

## NATURE OF THE ACTION

1.     Kahala denies that Plaintiffs are former employees of the Defendants.

2.      Kahala denies that they owned, operated, or controlled a fast food restaurant located at 5 West 46th Street, New York, New York 10036 under the name "Ranch One" during any relevant period.

3.      Denied as stated that Franchisee Defendants were franchised to operate the Ranch One store under contract with the Franchisor Defendants. To the contrary, a Kahala entity did enter into a Development Agreement with another defendant for the area in which the subject store was located.

4.      Kahala has insufficient information to know whether individual defendants Vinod Kumar Chand and Samy El Fouly (aka Mohamed E. Hussein and Mohamed Samy Hussein) served as owners, managers, principals, or agents of Franchisee Corporate Defendant and, through this corporate entity, operate or operated the restaurant as a joint or unified enterprise; accordingly, same is denied.

5.      Kahala has insufficient information to know whether Plaintiffs were employed as cook and ostensibly as a delivery worker; accordingly, same is denied..

6.      Kahala has insufficient information to know the truth of this allegation; accordingly, same is denied.

7.      Denied that Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage and overtime compensation for the hours that they worked.

8.      Kahala denies they knew or should have known of work performed by Plaintiffs and similarly situated employees, and/or knew or should have known of the unlawful policies of requiring Plaintiffs and other employees to work without providing the minimum wage, overtime, and spread of hours compensation required by federal and state law and regulations;

and upon information and belief, Franchisor Defendants had the power to stop the work and/or the violations, but did not do so.

9.      Denied that Kahala was obligated to maintain accurate recordkeeping of the hours worked, failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.  Unknown whether other payments were made in proper. Further, Kahala has no knowledge whether other Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they worked over 10 hours per day.

10.      Kahalla has no knowledge whether other Defendants employed and accounted for Plaintiff Reyes as a delivery worker in their payroll, or whether in actuality Plaintiff Reyes' duties required greater or equal time spent in non-tipped, non-delivery duties.

11.      Kahala has no knowledge whether Defendants failed to pay Plaintiff Reyes at the required minimum wage rate.

12.      This allegation is a conclusion of law, deemed to be denied, and requires no further response.

13.      Kahala has no knowledge whether Defendants employed the policy and practice of disguising Plaintiff Reyes' actual duties in payroll records by designating him as a delivery worker instead of a non-tipped employee.

14.      Kahala has no knowledge whether Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

15.      Kahala has no knowledge whether Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

16.     This allegation is a conclusion of law, deemed to be denied, and requires no further response.

17.     This allegation is a conclusion of law, deemed to be denied, and requires no further response.

## JURISDICTION AND VENUE

18.     Admitted.

19.     Admitted that venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district. Denied that Kahala maintains their corporate headquarters and offices within this district, and denied Kahala operates a fast food restaurant located in this district. Denied Plaintiffs were employed by Kahala in this district.

## THE PARTIES

### *Plaintiffs*

20.     Kahala has insufficient knowledge or information to form a belief as to the truth of this averment.

21.     Kahala has insufficient knowledge or information to form a belief as to the truth of this averment. .

### *Defendants*

22.     Kahala denies it owned, operated, or controlled a fast food restaurant located at 5 West 46th Street, New York, New York 10036 under the name "Ranch One".

### *Franchisor Defendants*

23.     Admitted Defendant Kahala Holdings LLC is an Arizona Limited Liability Company is an Arizona limited liability company with a principal place of business at 9311 East Via De Ventura, Scottsdale, AZ 85258.

4820-8693-6627.1

24.     Admitted Defendant Kahala Restaurants LLC is an Arizona limited liability company with a principal place of business at 9311 East Via De Ventura, Scottsdale, AZ 85258.

25.     Admitted Defendant Kahala Franchising LLC is an Arizona limited liability company with a principal place of business at 9311 East Via De Ventura, Scottsdale, AZ 85258.

26.     Admitted Defendant Kahala Restaurant Holdings LLC is an Arizona limited liability company with a principal place of business at 9311 East Via De Ventura, Scottsdale, AZ 85258.

27.     Admitted Defendant Kahala Franchise Corp. is a Delaware corporation with a principal place of business at 9311 East Via De Ventura, Scottsdale, AZ 85258.

28.     Admitted Defendant Kahala Brands Ltd. is a Delaware corporation with a principal place of business at 9311 East Via De Ventura, Scottsdale, AZ 85258.

29.     Denied as stated. Kahala Franchise Corp. granted a development agreement to KNK Food Group LLC to perform franchisor services to franchisees of Ranch 1 in New York. On April 10, 2006, Kahala Franchise Corp awarded a franchise to Samy El Fouly, where the franchisor's functions were to be performed by KNK Food Group LLC. The remainder of this allegation is denied.

30.     Denied.

31.     Denied.

Franchisee Defendants

32.     Unknown whether New Age Food Concepts, Inc. ("Franchisee Corporate Defendant") is a domestic corporation organized and existing under the laws of the State of New York.

33.     Unknown whether New Age Food Concepts, Inc.  had its principal place of business at 5 West 46th Street, New York, New York 11101.

34.     Unknown whether Defendant Vinod Kumar Chand is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period.

35.     This allegation is a conclusion of law, deemed to be denied and requires no further response.

36.     Unknown whether Defendant Vinod Kumar Chand possesses operational control over Franchisee Corporate Defendant, an ownership interest in Franchisee Corporate Defendant, or controls significant functions of Franchisee Corporate Defendant.  Unknown whether he determined the wages and compensation of the employees of Defendants, including Plaintiffs, established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

37.     Unknown whether Defendant Samy El Fouly (aka Mohamed E. Hussein and Mohamed Samy Hussein) is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period because the time period has not been defined.

38.     Admitted Defendant Samy El Fouly (aka Mohamed E. Hussein and Mohamed Samy Hussein) is sued individually in his capacity as owner, officer and/or agent of the Franchisee Corporate Defendant.

39.     Admitted Defendant Samy El Fouly (aka Mohamed E. Hussein and Mohamed Samy Hussein) possesses operational control over the Ranch 1 restaurant and determined the wages and compensation of the employees of Defendants, including Plaintiffs, established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

4820-8693-6627.1

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

40.     Kahala denies operating a fast food restaurant located in the Midtown section of Manhattan in New York City.

41.     Kahala denies that all individual defendants possess operational control over Franchisee Corporate Defendant, possesses ownership interests in Franchisee Corporate Defendant, and control significant functions of Franchisee Corporate Defendant.

42.     Denied Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

43.     Denied each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

44.     Denied Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

45.     Denied Defendants constituted a single employer of Plaintiffs and/or similarly situated individuals.

46.     Unknown whether individual defendants Vinod Kumar Chand and Samy El Fouly (aka Mohamed E. Hussein and Mohamed Samy Hussein) operate Franchisee Corporate Defendant as either an alter ego of themselves and/or fail to operate Franchisee Corporate Defendant as an entity legally separate and apart from themselves, by among other things:

4820-8693-6627.1

    a.   failing to adhere to the corporate formalities necessary to operate Franchisee Corporate Defendant as a corporation,

    b.   defectively forming or maintaining the corporate entity of Franchisee Corporate Defendant, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

    c.   transferring assets and debts freely as between all Defendants,

    d.   operating Franchisee Corporate Defendant for their own benefit as the sole or majority shareholders,

    e.   operating Franchisee Corporate Defendant for their own benefit and maintaining control over it as a closed corporation,

    f.   intermingling assets and debts of his own with Franchisee Corporate Defendant,

    g.   diminishing and/or transferring assets of Franchisee Corporate Defendant to avoid full liability as necessary to protect his own interests, and

    h.   other actions evincing a failure to adhere to the corporate form.

47.    This allegation is a conclusion of law and deemed to be denied without further response.

48.    Denied.

49.    Denied. .

50.    Denied Franchisor Defendants have a central research and development team to create new products for Ranch One stores.  *See* http://www.ranchone.com/franchise/index.html

4820-8693-6627.1

51.     Denied that Franchisor Defendants maintained control over any operational aspect many aspects of Franchisee Defendants' operations which are necessary to establish joint employment.

52.     Admitted generally but this is not a traditional location and this allegation is impertinent.

53.     Denied.

54.     Denied that Kahala was involved in any operational control of the business. Denied Franchisor Defendants had the authority and exercised the authority to control, directly or indirectly, the work of Plaintiffs and similarly situated employees.

55.     Denied Franchisor Defendants had the authority to and did require that Franchisee Defendants employ recordkeeping of the operation of Franchisee Defendants, including systems for tracking hours and wages and for retaining payroll records.  Denied recordkeeping systems required by Franchisor Defendants were an instrument which imposed unlawful policies, patterns, and/or practices in this case were implemented.

56.     Admitted Kahala Franchise Corp had the right to inspect the facilities and operations of Franchisee Defendants. The remainder of this allegation is denied.

57.     Admitted Kahala Franchise Corp the right to audit all Franchisee records. The remainder of this allegation is denied.

58.     Denied Franchisor Defendants had the authority to control, directly or indirectly, the timekeeping and payroll practices of Franchisee Defendants.

59.     Denied Franchisor Defendants knew or should have known of, and had the authority to exercise control over, the accuracy of records concerning the hours and wages of Plaintiffs and similarly situated employees through the monitoring of Franchisees.

- 9 -

60.     This allegation is a conclusion of law, deemed to be denied, and requires no further response.

61.     Unknown whether in each year from 2009 to the present, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

62.     This allegation is a conclusion of law, deemed to be denied, and requires no further response.

*Individual Plaintiffs*

63.     Unknown whether the Plaintiffs are former employees of the Defendants who were employed as a cook and ostensibly as a delivery worker or whether the delivery worker spent a considerable amount of time performing the non-tipped, non-delivery duties described above.

64.     Denied as a legal conclusion.

*Plaintiff Anayeli Guzman*

65.     Unknown whether Plaintiff Guzman was employed by Defendants from approximately 2006 until on or about October 31, 2015.

66.     Unknown whether Ms. Guzman was an employee of Defendants employed to work as a cook.

67.     Unknown whether Ms. Guzman's work duties required neither discretion nor independent judgment.

68.     Unknown whether Ms. Guzman regularly handled goods in interstate commerce, such as chicken, vegetables, and other supplies produced outside of the State of New York.

69.     Unknown whether throughout her employment with Defendants, Plaintiff Guzman regularly worked in excess of 40 hours per week.

- 10 -

4820-8693-6627.1

70.     Unknown whether from approximately December 2009 until on or about October 31, 2015, Ms. Guzman worked from approximately 7:00 a.m. until on or about 5:00 p.m. Mondays through Fridays and from approximately 10:00 a.m. until on or about 8:00 p.m. on Saturdays (typically 60 hours per week).

71.     Unknown whether on numerous occasions, Defendants required Plaintiff Guzman to work beyond her regularly scheduled departure time.

72.     Unknown whether at least once or twice a month, Defendants required Plaintiff Guzman to work until 9:00 p.m. on weekdays to cover for an absent fellow worker; or whether in addition, on those same occasions, Defendants required Plaintiff Guzman to start working at 6:00 a.m. the next morning to perform the work that her absent workmate failed to perform the night before.

73.     Unknown whether throughout her employment with Defendants, Plaintiff Guzman was paid her wages in a combination of cash and check; specifically, Defendants paid Plaintiff Guzman $195 by check and the rest in cash.

74.     Unknown whether from approximately December 2009 until on or about August 2010, Defendants paid Plaintiff Guzman $9.00 per hour.

75.     Unknown whether from approximately August 2010 until on or about August 2011, Defendants paid Plaintiff Guzman $9.50 per hour.

76.     Unknown whether from approximately August 2011 until on or about August 2012, Defendants paid Plaintiff Guzman $10.00 per hour.

77.     Unknown whether from approximately August 2012 until on or about August 2013, Defendants paid Plaintiff Guzman $10.50 per hour

- 11 -

78.     Unknown whether from approximately August 2013 until on or about August 2014, Defendants paid Plaintiff Guzman $11.00 per hour.

79.     Unknown whether from approximately August 2014 until on or about August 2015, Defendants paid Plaintiff Guzman $11.50 per hour.

80.     Unknown whether from approximately August 2015 until October 31, 2015, Defendants paid Plaintiff Guzman $12.00 per hour

81.     Unknown whether Defendants failed to provide Plaintiff Guzman with breaks of any kind during her work hours.

82.     Unknown whether prior to approximately 2013, Ms. Guzman was not required to keep track of her work time, nor to her knowledge did Defendants utilize any time tracking device, such as sign in sheets or punch cards, to accurately reflect her actual hours worked.

83.     Unknown whether Defendants did not provide Ms. Guzman with any document or other statement accurately accounting for all of her actual hours worked, or setting forth the rate of pay for all of her hours worked.

84.     Unknown whether Defendants did not provide Plaintiff Guzman with an accurate statement of wages with each payment of wages, as required by NYLL 195(3).

85.     Unknown whether any notification, either in the form of posted notices or other means, was given to Plaintiff Guzman regarding overtime and wages under the FLSA and NYLL.

86.     Unknown whether Defendants never provided Plaintiff Guzman with a written notice, in English and in Spanish (Plaintiff Guzman's primary language), of her rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

87.     Unknown whether Defendants required Plaintiff Guzman to purchase "tools of the trade" with her own funds—including approximately 10 black or red shirts per year, 3 black pants per year and a hat.

*Plaintiff Hector Reyes*

88.     Unknown whether Plaintiff Reyes was employed by Defendants from approximately April 2009 until on or about October 31, 2015.

89.     Unknown whether Defendants ostensibly employed Plaintiff Reyes as a delivery worker.

90.     Unknown whether Plaintiff Reyes was also required to spend a significant portion of his work day performing the non-tipped, non-delivery duties described above.

91.     Unknown whether Plaintiff Reyes was ostensibly employed as a delivery worker, and spent at least three hours per day performing non-delivery work throughout his employment with Defendants.

92.     Unknown whether Plaintiff Reyes regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

93.     Unknown whether Plaintiff Reyes' work duties required neither discretion nor independent judgment.

94.     Unknown whether throughout his employment with Defendants, Plaintiff Reyes regularly worked in excess of 40 hours per week.

95.     Unknown whether from approximately December 2009 until on or about May 2013, Plaintiff Reyes worked from approximately 7:00 a.m. until on or about 4:00 p.m. Mondays through Fridays and from approximately 10:00 a.m. until on or about 8:00 p.m. on Saturdays; in addition for a period of approximately 3 months in 2013, Plaintiff Reyes had to work from

- 13 -

approximately 10:00 a.m. until on or about 8:00 p.m. on Sundays (typically 55 to 65 hours per week).

96.     Unknown whether from approximately May 2013 until on or about June 2014, Plaintiff Reyes worked from approximately 7:00 a.m. until on or about 4:00 p.m. Mondays through Fridays (typically 45 hours per week).

97.     Unknown whether from approximately June 2014 until on or about October 31, 2015, Plaintiff Reyes worked from approximately 8:00 a.m. until on or about 4:00 p.m. Mondays through Fridays and from approximately 10:30 a.m. until on or about 7:30 p.m. on Saturdays (typically 49 hours per week).

98.     Unknown whether from approximately December 2009 until on or about June 2014, Plaintiff Reyes was paid his wages in cash.

99.     Unknown whether from approximately June 2014 until on or about October 31, 2015, Plaintiff Reyes was paid his wages in a combination of check and cash (specifically, $150 by check and the rest in cash).

100.    Unknown whether from approximately December 2009 until on or about May 2013, Plaintiff Reyes was paid a fixed salary of $280 per week.

101.    Unknown whether from approximately May 2013 until on or about June 2014, Plaintiff Reyes was paid $6.40 per hour.

102.    Unknown whether from approximately June 2014 until October 31, 2015, Plaintiff Reyes was paid $7.50 per hour.

103.    Unknown whether Plaintiff Reyes was notified by Defendants that his tips were being included as an offset for wages.

104.    Unknown whether Defendants failed to account for these tips in any daily or weekly accounting of Plaintiff Reyes' wages.

105.    Unknown whether prior to approximately 2013, Plaintiff Reyes was not required to keep track of his time, nor to his knowledge did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

106.    Unknown whether Defendants failed to provide Plaintiff Reyes with a statement of wages with each payment of wages, as required by NYLL 195(3).

107.    Unknown whether any notification, either in the form of posted notices or other means, was given to Plaintiff Reyes regarding overtime and wages under the FLSA and NYLL.

108.    Unknown whether Defendants gave any notice to Plaintiff Reyes, in English and in Spanish (Plaintiff Reyes' primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

109.    Unknown whether Defendants required Plaintiff Reyes to purchase "tools of the trade" with his own funds—including 8 bikes and 2 helmets.

*Defendants' General Employment Practices*

110.    Denied Kahala maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours per week without paying them appropriate minimum wage, overtime and spread of hours pay as required by federal and state laws.

111.    Denied Kahala required Plaintiff Reyes to perform general delivery, non-tipped restaurant tasks in addition to his primary duties as delivery worker.

112.    Unknown whether Plaintiff Reyes was employed ostensibly as a tipped employee by Defendants, although his actual duties included greater or equal time spent performing non-tipped duties.

4820-8693-6627.1

113.    Unknown whether Plaintiff Reyes was not paid at the minimum wage rate by Defendants.  The remainder of this allegation is a legal conclusion which is denied.

114.    This allegation is a legal conclusion which is denied.

115.    Unknown whether Plaintiff Reyes' duties were incidental to his occupation as a delivery worker, or constituted entirely unrelated general fast food restaurant work with duties including the non-tipped, non-delivery duties described above.

116.    Denied as a legal conclusion.

117.    Unknown whether Defendants failed to inform Plaintiff Reyes that his tips would be credited towards the payment of the minimum wage.

118.    Unknown whether at no time did Defendants inform Plaintiff Reyes that they had reduced his hourly wage by a tip allowance.

119.    Unknown whether Defendants failed to maintain a record of tips earned by Plaintiff Reyes for the deliveries he made to customers.

120.    Unknown whether throughout their employment with defendants, Plaintiffs were paid their wages partially or entirely in cash.

121.    Kahala denies it willfully disregarded and purposefully evaded recordkeeping requirements of the Fair Labor Standards Act and New York Labor Law by failing to maintain accurate and complete timesheets and payroll records.

122.    Denied.

123.    Denied.

124.    Denied.

125.    Denied.

- 16 -

4820-8693-6627.1

126.    Unknown whether Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

127.    Unknown whether Defendants failed to provide Plaintiffs and other employees with wage statements at the time of their payment of wages, containing:  the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

128.    Unknown whether Defendants failed to provide Plaintiffs and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing:  the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

129.    This allegation of law is denied.

130.    This allegation of law is denied.

131.    This allegation of law is denied.

132.     Denied that at all relevant times, Plaintiffs, and other members of the FLSA Class who are and/or have been similarly situated, have been subject to Defendants' willful failure to keep records required by the FLSA.

133.     Denied that the claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION
### (VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA)

134.     Kahala repeats and realleges all paragraphs above as though fully set forth herein.

135.     Denied that Kahala wase Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).   Denied Kahala had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for their employment.

136.     This is denied as an allegation of law.

137.     Denied in fact and as a legal conclusion.

138.     Denied.

139.     Denied.

140.     Denied.

## SECOND CAUSE OF ACTION
### (VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA)

141.     Kahala repeats and realleges all paragraphs above as though fully set forth herein.

142.     Denied Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

143.     Denied.

144.     Denied.

- 18 -

## THIRD CAUSE OF ACTION
### (VIOLATION OF THE NEW YORK MINIMUM WAGE ACT)

145.    Kahala repeats and realleges all paragraphs above as though fully set forth herein.

146.    Denied that at all times relevant to this action, Kahala was Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Denied Kahala had the power to hire and fire Plaintiffs, controlled their terms and conditions of employment, and determined the rates and methods of any compensation in exchange for their employment.

147.    Denied.

148.    Denied.

149.    Denied.

## FOURTH CAUSE OF ACTION
### (VIOLATION OF THE OVERTIME PROVISIONS OF THE
### NEW YORK STATE LABOR LAW)

150.    Kahala repeats and realleges all paragraphs above as though fully set forth herein.

151.    Denied.

152.    Denied.

153.    Denied.

## FIFTH CAUSE OF ACTION
### (VIOLATION OF THE SPREAD OF HOURS WAGE ORDER
### OF THE NEW YORK COMMISSIONER OF LABOR)

154.    Kahala repeats and realleges all paragraphs above as though fully set forth herein.

155.    Denied Defendants failed to pay Plaintiffs one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours exceeded ten hours in violation of New York Lab. Law §§ 190 et seq. and 650 et seq. and the wage order of the New York Commissioner of Labor codified at N.Y. Comp. Codes R. & Regs. Tit. 12, § 142-2.4(a) (2009).

156.    Denied.

157.    Denied.

### SIXTH CAUSE OF ACTION
### (VIOLATION OF THE NOTICE AND RECORDKEEPING
### REQUIREMENTS OF THE NEW YORK LABOR LAW)

158.    Kahala repeats and realleges all paragraphs above as though fully set forth herein.

159.    Denied that Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing:  the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

160.    Denied as a legal conclusion.

### SEVENTH CAUSE OF ACTION
### (VIOLATION OF THE WAGE STATEMENT PROVISIONS
### OF THE NEW YORK LABOR LAW)

161.    Kahala repeats and realleges all paragraphs above as though set forth fully herein.

162.    Kahala denies that with each payment of wages, Defendants failed to provide Plaintiffs with a statement listing each the following:  the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of

- 20 -

pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

163.    Denied as a legal conclusion.

## EIGHTH CAUSE OF ACTION
### (RECOVERY OF EQUIPMENT COSTS)

164.    Kahala repeats and realleges all paragraphs above as though set forth fully herein.

165.    Kahala denies requiring Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, such as bicycles, further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C. § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

166.    Denied.

## PRAYER FOR RELIEF

WHEREFORE, the Kahala defendants request judgment in their favor.

## SEPARATE DEFENSES

1.  The complaint fails to state a claim against Kahala upon which relief can be granted.

2.  Kahala asserts that at all times it engaged in good faith attempts to comply with the law.

3.  Kahala affirmatively pleads the two and three year statute of limitations with respect to the FLSA claims and the applicable statute of limitations with respect to all other claims.

4.  Plaintiffs are not entitled to liquidated damages as any activity by Kahala was taken in good faith and Kahala had reasonable grounds to believe that its conduct was consistent with applicable law.

## CROSS-CLAIMS AGAINST OTHER DEFENDANTS

142.    The other named defendants are liable to Kahala for all or part of the claim asserted by Plaintiffs.

4820-8693-6627.1

143.    The liability arises out of common law indemnity.

144.    To the extent any co-defendant has a written contract with Kahala, then  Kahala is

entitled to be indemnified and saved harmless under that contract for the claim asserted by

Plaintiffs, including damages, counsel fees, interests, costs of investigation, expert testimony

costs, and the costs of suit.

WHEREFORE, Kahala Holdings, LLC requests judgment against co-defendants.


Dated: New York, New York
        June 24, 2016

                                NIXON PEABODY LLP

                        By:    /s/ Craig Tractenberg
                               Craig R. Tractenberg [CT-6759]
                               NIXON PEABODY LLP
                               437 Madison  Avenue
                               New York, New York 10022
                               Telephone: (212) 940-3722
                               Facsimile: (866) 852-2730

4820-8693-6627.1